IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KAYLA MOODY, | ) | Case No. 5:16CV1168 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.    Introduction

Plaintiff, Kayla Moody seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act.  This matter is before the court pursuant to 42 U.S.C. §1383(c)(3), 42 U.S.C. §405(g) and Local Rule 72.2(b).

Because plaintiff has not established a basis for an order remanding this case to the Commissioner, I recommend that the final decision of the Commissioner be **AFFIRMED** and Moody's request for Sentence Six remand be **DENIED**.

## II.    Procedural History

Moody received SSI as a child due to cerebral palsy and intellectual disability.  (Tr. 48) As required by law, Moody's eligibility for benefits was re-determined at age 18.  (Tr. 55-59) On July 11, 2012, disability benefits ceased after a finding that her condition did not meet the

adult standard of disability.  (Tr. 65).  Moody requested reconsideration of that determination.
(Id.)  After benefits were denied on reconsideration, Moody requested a hearing.  (Tr. 86-87)  On
June 24, 2014, a hearing took place before Administrative Law Judge James A. Hill ("ALJ").
(Tr. 32-47)  Moody and her mother testified at the hearing.  (Tr. 42-47)  The ALJ determined
that he would continue the hearing later because of the results of an MRI no the plaintiff were
not available, and the ALJ wanted to ensure he had that information before proceeding.  (Tr. 45)
The ALJ conducted a supplemental hearing on October 9, 2014.  Moody again appeared and
testified.  Medical expert Karl Manders, M.D., and vocational expert Thomas Nimberger also
testified.  (Supp. Tr. 754-802)  On October 30, 2014, the ALJ denied Moody's claim for benefits.
(Tr. 8-31)  The Appeals Council denied review of that decision on March 22, 2016, rendering the
ALJ's decision the final decision of the Commissioner.  (Tr. 1-6)

III.     **Evidence**

A.     **Medical Evidence**

Moody raises a single argument for review: that a Sentence Six remand is required for
consideration of new evidence regarding her right hand tremor.  ECF Doc. No. 12, Page ID#
871.  In the interest of judicial economy the undersigned will only summarize the evidence that
is necessary to address that discrete issue.

1.     **Relevant treatment records prior to the ALJ's decision**

On March 5, 2014, Moody presented to the Rheumatology Clinic for concerns of
fibromyalgia.  (Tr. 500)  She also complained of right arm shaking which reportedly worsened
with eating, drinking, and hair brushing.  (Id.)  Moody was referred to neurology department;
and underwent an examination by Selwyn-Lloyd McPherson, M.D. on March 11, 2014.  (Tr.

2

503, 737)  Dr. McPherson determined that there was no clinical or neurophysiological evidence of right upper extremity tremor.  (Tr. 741)

On April 30, 2014, Moody presented as a new patient to Naomi Tyree, M.D.  Moody reported sporadic tremors of her bilateral hands since the prior October, worse when attempting to do activities.  (Tr. 554)  Dr. Tyree noted that the "[t]remor appears to be present when attention is drawn to extremity, no resting tremor.  Most prominent when arm held in extension." (Tr. 556)   It was recommended that Moody follow up with Dr. Tyree six months later.  (Id.)

On June 5, 2014, Moody returned to Dr. McPherson with several complaints including right arm shaking.  (Tr. 732-36)  Dr. McPherson noted Moody had a "[m]ild tremor [non-physiological] of the outstretched fingers of the upper extremities bilaterally."  (Tr. 734)  Dr. McPherson again noted that there was no clinical or neurophysiological evidence of right upper extremity tremor.  (Tr. 735)  He recommended a trial of Inderal (20mg twice daily) in order to rule out benign essential tremor.  (Id.)

### 2.     Relevant treatment records after the ALJ's decision

Moody attaches as Exhibit A to her brief various records for medical treatment that took place following the October 2014 administrative hearing.  ECF Doc. No. 12-1, Page ID# 882-902.  Moody began treating with NeuroCare in November 2014.  An examination revealed tremor/involuntary movement on the right.  Id. at Page ID# 900.  Moody reported that the tremors seemed to be getting worse.  Id.  She was started on Topamax for migraines and an electroencephalogram ("EEG") and MRI were ordered because of the tremor.  Id. at Page ID# 901.  The December 2014 results of the EEG and MRI were normal.  Id. at Page ID# 882-84.  On January 15, 2015, she returned to NeuroCare.  She reported an increased left hand tremor and that her legs trembled when laying down.  Id. at Page ID# 891.  It was not noted as to whether

3

any tremors were observed upon examination.  Id. at Page ID# 891-96.  It was reported, at that

time, that Topamax was also being used to treat her tremor.  Id. at Page ID# 894.  Moody

returned to NeuroCare seven months later (August 2015).  Moody reported feeling increasing

tremors, "though not affecting her abilities to function."  Id. at Page ID# 885.  No tremors or

involuntary movements were found upon examination and it was ordered that she continue

taking Topamax.  Id. at Page ID# 888.

   **B.**  **Testimonial Evidence**

    **1.**  **Moody Testimony**

  Moody was represented by counsel and testified at both the June 24, 2014, and October 9,

2014, hearings.  (Tr. 32-46, 754-802)  Moody testified that her tremors started around September

or October of 2013.  (Tr. 43)  She testified that the tremors started in her right hand and moved

into her left.  (Id; 773).  She further testified that she is right-handed.  Id.  She stated that, due to

the tremors, she has had problems using her phone, eating, and drinking.  (Tr. 44)  At the

October 9, 2014, hearing the ALJ noted that Moody had an "obvious" tremor in her right hand.

(Tr. 762)

    **2.**  **Medical Expert Testimony**

  Carl Manders, M.D., testified at Moody's October 9, 2014, hearing as a medical expert

("ME").  (Tr. 781-796)  The ME explained that he was board certified in neurological surgery

and pain medicine.  (Tr. 782)  The ME questioned if Moody had ever been put on medication to

treat her tremors.  (Tr. 784)  Moody responded that she had not.  Id.  The ME stated that he

agreed with Moody's neurologist who determined that she suffered from a "benign essential

tremor" with "no underlying neurological emphasis with it."  (Tr. 786)  The ME noted that

treatment was suggested (i.e., that she would be a good candidate for Inderal) but not attempted.

Id.  The ME testified that the tremor is not considered a "neurological deficit" and is treatable

with medication.  (Tr. 786, 488)   The ME further stated that medications for treatment of the

tremor are "highly successful."  (Tr. 791)

## IV.     Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the

existence of a disability. "Disability" is defined as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or
> mental impairment or impairments are of such severity that he is not only unable to do
> his previous work but cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists in the national
> economy[1]….

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to

follow a five-step sequential analysis set out in agency regulations. The five steps can be

summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be
   severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe
   impairment that has lasted or is expected to last for a continuous period of at

---

[1] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in
the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

**V.    The ALJ's Decision**

The ALJ issued a decision on October 30, 2014.  A summary of his findings are as follows:

1. Moody attained age 18 on January 3, 2012, and was eligible for supplemental security income benefits as a child for the month preceding the month in which she attained age 18.  (Tr. 13)

2. Since July 1, 2012, Moody has had the following severe impairments: borderline intellectual functioning; mild cerebral palsy, degenerative disc disease of the lumbar spine; and labral tear of the left shoulder, status post-surgical repair.  (Tr. 13)

3. Moody does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 14)

4. Since July 1, 2012, Moody has had the residual functional capacity to perform light work, but she can no more than frequently stoop, kneel, crouch, and crawl, and she is limited to occasional reaching overhead with her left upper extremity.

6

She can understand, remember, and carry out simple instructions, and she can perform simple, routine tasks. She can also perform "low stress" work, defined as work not subjecting her to strict quotas, fast-paced high production demands, assembly line work, and work not requiring negotiation, arbitration, confrontation, directing the work of others, or being responsible for the safety of others. She can adjust to infrequent workplace changes; however, she can no more than occasionally interact with co-workers and/or the general public. (Tr. 16)

5. Moody has no past relevant work. (Tr. 24)

6. Moody was born on January 4, 1994, and is a younger individual age 18-49. (Tr. 24)

7. Moody has at least a high school education and is able to communicate in English. (Tr. 24)

8. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work. (Tr. 24)

9. Since July 1, 2012, considering Moody's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 24)

Based on these findings, the ALJ determined that Moody had not been under a disability since July 1, 2012. (Tr. 24)

## VI.     Law & Analysis

### A.     Sentence Six Remand

After the administrative hearing and a review of the evidence then of record, the ALJ determined that Moody's right hand tremor was not severe. Moody disagrees with that conclusion and contends that her post-hearing treatment notes constitute new material evidence requiring remand to the ALJ under Sentence Six. ECF Doc. No. 12, Page ID# 878-880. The Commissioners asserts that Moody's post-hearing evidence is not "material" (i.e., there is not a reasonable probability that the new evidence may have changed the ALJ's decision). ECF Doc. No. 14, Page ID# 924-25.

7

Generally, this court's review of the Commissioner's decision is limited to the evidence presented to the ALJ.  *See Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner*, 96 F.3d 146,148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *see also Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at *4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ.").  However, there are two types of remand: a sentence four remand made in connection with a judgment affirming, modifying, or reversing the commissioner's decision; and a Sentence Six remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision.  42 U.S.C. §405(g); S*ee, e.g., Hollon v. Commissioner*, 447 F.3d 477, 486 (6th Cir. 2006).  In the sentence four context, the court cannot consider evidence that was not submitted to the ALJ.  *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); Foster, 279 F.3d at 357.  The court can only consider such evidence in determining whether a Sentence Six remand is appropriate.  Id.

Under Sentence Six of 42 U.S.C. § 405(g), "[t]he court may ... at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  The plaintiff has the burden to demonstrate that the evidence she now presents in support of a remand is "new" and "material," and that there was "good cause" for her failure to present this evidence in the prior proceedings.  *See Hollon,* 447 F.3d at 483; *see also Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010) (although the material that the claimant sought to introduce was "new," the claimant failed to meet her burden of showing "good cause" for failure to submit materials and

8

that the evidence was "material."). Evidence is "new only if it was not in existence or available to the claimant at the time of the administrative proceeding." F*erguson*, 628 F.3d at 276 (internal quotations and citations omitted).  "[E]vidence is material only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence."  *Id.* (internal quotations and citations omitted).  "A claimant shows good cause by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."  *Id.* (internal quotations and citations omitted)

Moody fails to establish the necessary requirements for a Sentence Six remand.  First, Moody's addition evidence is not "new" because the additional evidence is largely cumulative to what was in existence before the ALJ.  Second, even if the evidence were considered to be "new" for the sake of analysis, Moody has not satisfied her burden to show that the evidence is "material."

### B.      Moody has not demonstrated that the post-decision evidence is new

Initially, Moody fails to demonstrate that the post-hearing evidence is "new."  The Sixth Circuit has held that "evidence [ ] largely cumulative of evidence and opinions already present in the record" need not be considered for remand. *Longworth v. Comm'r of Soc. Sec*., 402 F.3d 591, 598 (6th Cir.2005). **"**This notion holds true because a Sentence Six remand is appropriate only if the plaintiff can show new substantive evidence that might have changed the outcome of the prior proceeding[;] and if the record presently reflects the same evidence and opinions at the time of the proceeding, then it is not probable that the "new" evidence would have changed the outcome."  *Walton v. Astrue,* 773 F. Supp. 2d 742, 751 (N.D. Ohio 2011)(internal quotation and citation omitted); *Pickard v. Comm'r* of Soc. Sec., 224 F.Supp.2d 1161, 1171 (W.D.Tenn.2002)

(*quoting Elliott v. Apfel,* 28 F. App'x 420, 424 (6th Cir.2002) ("New evidence must indeed be new; it cannot be cumulative of evidence already in the record.")  Here, Moody's alleged "new" evidence consists mainly of her continued complaints of a hand tremor.  She also presents an EEG and MRI which returned normal results and one medical observation of her tremor prior to starting on Topamax.  Moody's subjective complaints of a continuing tremor, normal medical testing results, and observations of the tremor upon examination (prior to taking medication for that impairment) were all cumulative to the evidence presented to the ALJ prior to the hearing. The ALJ noted Moody's subjective complaints but found that they were "not as restrictive" as she asserted.  (Tr. 17)  The ALJ noted normal results on nerve conduction/EMG studies.  (Tr. 21).  The ALJ acknowledged Dr. McPherson's observation of a mild tremor, but explained that the observation was coupled with Dr. McPherson's opinion that there was "no clinical evidence of a dermatomal distribution of nerve root or peripheral nerve dysfunction, no clinical or neurophysiological evidence or right upper extremity tremor, and that the claimant's history of mild cerebral palsy was currently without significant clinical manifestations."  (Tr. 22)  Moody fails to show that her additional evidence is not merely cumulative to what is already in the record.  Accordingly, her evidence is not new for purpose of §405(g), even though the submitted materials were generated after the ALJ's decision was issued.

### C.  Moody has not demonstrated that the post-decision evidence is material

Moody also fails to demonstrate that her post-hearing evidence is "material."  To be found material for purposes of a Sentence Six remand, Moody's additional evidence must: "(1) be relevant and probative of her condition prior to the ALJ's decision, and (2) establish a reasonable probability that the ALJ would have reached a different decision if he had considered the evidence." *See Sizemore v. Secretary of H.H.S.,* 865 F.2d 709, 711 (6th Cir.1988); *see also*

*Hollon*, 447 F.3d at 488.

Initially, to the extent Moody's evidence indicates a worsening of her tremor, Sentence Six is an inappropriate remedy.  "Reviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition."  *Sizemore*, 865 F.2d at 712 (citation omitted); See also 20 CFR §416.330(b) (providing that the remedy for a claimant who meets the requirements for disability only after the period in which her application was in effect- i.e., after the ALJ's decision-is to file a new application).

Next, Moody fails to establish a reasonable probability that the ALJ would have reached a different result with the supplemented evidence.  Moody argues that her additional evidence is material because it shows that her tremor has continued in duration for more than twelve months and has not improved despite treatment.  However, at Step Two the ALJ concluded that Moody's tremors were not severe for two reasons:  (1) that they had not lasted for 12 consecutive months; and (2) by giving weight to medical expert Dr. Manders' opinion that the condition was easily resolved with medication.  (Tr. 13)  Thus, by focusing primarily on the duration issue, Moody ignores the fact that the ALJ also relied on the medical expert's opinion that the condition was easily resolved with medication.

At the time of the hearing, Moody testified that she was not on medication for the tremor. (Tr. 784)  Moody did not begin taking medication to treat the tremor until after the ALJ's decision denying benefits.  Nonetheless, the ALJ accorded great weight to the ME's opinion that Moody's tremor was easily treatable with medication and not a significant impediment to work. (Tr. 23)

One month after the ALJ's issued his decision denying benefits, Moody started treatment at NeuroCare.  A tremor/involuntary movement was noted at the examination at that time.  ECF

11

Doc. No. 12-1, Page ID# 900.  She was referred for additional testing.  Id.  An EEG and a MRI were ordered in December 2014.  The EEG and MRI yielded normal results.  Id. at Page ID# 882-84.  The next month it was reported that Moody had started "up to 50mg" of Topamax for her tremor and her migraines.  Id. at Page ID# 891, 894.  At that time, Moody reported an increased tremor in her left hand and trembling in her legs.  Id.  It was not noted whether any tremors were witnessed upon examination.  The next treatment note from NeuroCare is seven months later in August 2015.  At that time, it was reported that Moody was taking Topamax for the tremor.  Id. at Page ID# 885.  No tremors or involuntary movements were noted upon examination.  Id.  It was reported that Moody "feels that she is having increasing tremors, though not affecting her abilities to function.  She states that it was in the right hand and now in the left."  Id. at 885.

In consideration of the post-decision evidence, it cannot be said that there is a "reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence."  F*erguson*, 628 F.3d at 276.  Moody's post-hearing evidence consists of one observation of a tremor/involuntary movement prior to starting Topamax, followed by normal EEG and MRI results, and Moody's self-reports that the tremors have increased.  First, the normal EEG and MRI studies are consistent with the ALJ's previous determination that similar tests in the past "yielded generally unremarkable findings."  (Tr. 23) Second, although one medical professional observed a tremor/involuntary movement, this was prior to Moody starting treatment (i.e., Topamax).  After starting medication for the tremor, no tremors or involuntary movements were found upon examination.  This is consistent with the ALJ's conclusion, based on the medical expert's testimony, that the tremors are easily treated. The only evidence that the tremor did not improve after treatment was Moody's self-report that

12

the tremor had increased.  However, Moody also noted that the tremors were not affecting her ability to function.  Id. at Page ID# 885.  This evidence is consistent with the ALJ's determination that the tremor was not a significant impediment to work.  (Tr. 23)  Furthermore, the ALJ reasonably determined that Moody's allegations of the "intensity, persistence, and limiting effects" of her symptoms were not fully credible, and Moody has not objected to that determination.  (Tr. 17)  Based on all of the above, there is no reasonable probability that a different disposition would have been reached based on Moody's subjective complaints that her tremor had increased.  This is so, because the ALJ found Moody's allegations were not fully credible and that the tremor did not present a significant impediment to work.  Even if credit was given to Moody's self-reported increase in symptoms, Moody stated that the tremor did not affect her ability to function.  *See Norton v. Comm'r of Soc. Sec.,* 607 F. App'x 913, 918 (11th Cir. 2015) (finding evidence was not material where there were no objective findings to support claimants subjective complaints and no indication that the impairment prevented a significant impediment to performing a full range of medium work); *Sylvester v. Comm'r of Soc. Sec.,* No. 12-13239, 2013 WL 3188877, at *14 (E.D. Mich. June 20, 2013) (finding that a Sentence Six remand was not appropriate where the new evidence consisted of a doctor's opinion based solely on the claimant's subjective complaints); *Coon v. Comm'r of Soc. Sec.,* No. 1:07CV807, 2008 WL 4411473, at *6 (S.D. Ohio Sept. 29, 2008) (a doctor's report merely recording claimant's allegations of disability was not material).

### D.  Moody's severe impairment argument is immaterial

The ALJ found that Moody's tremor was not a severe impairment.  Moody asserts that her additional evidence demonstrates that her condition her tremor was severe because it lasted

for more than 12 months.  Thus, she proffers that the ALJ erred by finding that her tremor was not a severe impairment.

Under Step Two, the ALJ found that Moody's tremor was not severe because it had "not lasted for 12 consecutive months, *and* testimony from medical expert Dr. Manders indicates that this condition is easily resolved with medication."  (Tr. 13)(emphasis added)  Therefore, the ALJ did not solely rely on the durational element in determining that Moody's tremor was not severe.

Moreover, despite finding that Moody's tremor was not severe, the ALJ considered the tremor at Step Four.  "[Once,] an ALJ determines that one or more impairments is severe, the ALJ 'must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' " *Fisk v. Astrue,* 253 Fed.App'x. 580, 583 (6th Cir.2007) (citing Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *5 (July 2, 1996)).  Because the ALJ found that Moody suffered from at least one severe impairment, the ALJ was required to consider *all* of Plaintiff's impairments—severe and non-severe—at Step Four.  *Fisk,* 253 Fed.App'x. at 583; *See also Walton v. Astrue*, 773 F. Supp. 2d 742, 747 (N.D. Ohio 2011) ("When an ALJ considers all of a claimant's impairments, post-Step Two, an ALJ's failure to find additional severe impairments at Step Two does not constitute reversible error.") *citing Maziarz v. Sec'y of Health & Human Servs*., 837 F.2d 240, 244 (6th Cir.1987); *Riepen v. Comm'r of Soc. Sec.,* 198 Fed.Appx. 414, 415 (6th Cir.2006); *Johnson v. Astrue*, No. 3:07–CV–96, 2008 WL 746686, at *2 (E.D.Tenn., March 18, 2008).  Here, the ALJ fulfilled that duty.  Thus, even if the ALJ erred in not considering Moody's tremor to constitute a severe impairment, that error would not be subject to reversal because the ALJ considered all impairments (including the tremor) at Step Four.  Accordingly, Moody's evidence that her tremor lasted for longer than 12 months is immaterial.

14

## VII.    Recommendation

Plaintiff Kayla Moody has not demonstrated an appropriate basis upon which to remand the Commissioner's decision.  Substantial evidence supported the ALJ's decisions and he applied the correct legal standards.  I recommend that the final decision of the Commissioner be AFFIRMED, pursuant to 42 U.S.C. §405(g).


Dated: May 8, 2017

Thomas M. Parker
United States Magistrate Judge


## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).

15